# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| PAKITA MCKINNEY, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>EEG, INC. d/b/a EMPIRE BEAUTY SCHOOL and AR RESOURCES, INC.,<br><br>    Defendants. | Case No.: 19-cv-1358<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Pakita McKinney is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant EEG, Inc. d/b/a Empire Beauty School ("EEG") is a foreign corporation with its principal offices located at 396 Pottsville St. Clair Highway, Pottsville, PA 17901.

7. EEG provides personal education services to consumers in Wisconsin pursuant to contracts in which EEG agrees to accept deferred payment for such services.

8. When attempting to collect debts in Wisconsin, EEG is a debt collector as defined in Wis. Stat. § 427.103(3).

9. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

10. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

11. Defendant AR Resources, Inc. ("ARR") is a foreign corporation with its primary offices located at 1777 Sentry Pkwy W, Blue Bell, PA 19422.

2

12. ARR is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

13. ARR is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

14. ARR is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

15. On or about May 8, 2019, EEG mailed to Plaintiff a "Final Notice" regarding an alleged debt owed to EEG. A copy of this notice is attached to this Complaint as Exhibit A.

16. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of a transaction for personal, family, or household purposes, namely educational services.

17. Upon information and belief, Exhibit A is a form letter, generated by computer and with the information specific to Plaintiff inserted by computer.

18. Upon information and belief, Exhibit A is a form letter used by EEG to attempt to collect alleged debts.

19. Exhibit A indicates that the "Account Balance Due" of Plaintiff's alleged debt is $558.70.

20. Exhibit A also includes the following representation:

**FINAL NOTICE**

**YOUR ACCOUNT WILL BE FORWARDED TO A COLLECTION AGENCY**

**\*\*\*CALL US BEFORE YOUR CREDIT SCORE IS IMPACTED\*\*\***

3

21. <u>Exhibit A</u> also states: "If payment is not received in 10 days, your account will be transferred to a **Collection Agency**. Once your account is forwarded to a collection agency, additional fees up to 30% of the balance due may be applied to your account and your account will be reported to credit bureaus." (emphasis original).

22. <u>Exhibit A</u> thus threatens to impose "additional fees" or other collection charges.

23. On or around August 19, 2019, ARR mailed a debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to the complaint as <u>Exhibit B</u>.

24. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

25. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter, used by ARR to attempt to collect alleged debts.

26. Upon information and belief, <u>Exhibit B</u> is the first written communication ARR mailed to Plaintiff regarding this alleged debt.

27. <u>Exhibit B</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

28. The header of <u>Exhibit B</u> also includes the following representation:

> Re: MILWAUKEE WI
> Account Number: ███7820
> ARR Account Number: ███2311
> Balance: $725.70

29. Exhibit B indicates that the "Balance" of Plaintiff's alleged debt is $725.70, which is approximately 30% greater than the "Account Balance Due" stated in Exhibit A of $558.70.

30. Exhibit B thus appears to actually attempt to impose the "additional fees" threatened by Exhibit A.

31. Under Wisconsin law, however, ARR and EEG lacked the authority to impose any "additional fees" or other collection charges.

32. A contract for services with an agreement to defer payment where the balance is payable in installments or for which finance charges, such as interest, may be imposed, is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

33. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

34. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

5

35. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

36. Because Plaintiff's alleged debt is a consumer credit transaction, Exhibits A & B falsely state or imply that ARR and EEG have a right to add collection fees to the debt.

37. Even if a provision of any agreement between Plaintiffs and EEG would purport to permit EEG and/or ARR to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *see also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

38. Furthermore, Exhibit B fails to clearly and unequivocally identify the name of the creditor to whom Plaintiff's alleged debt is owed.

39. The header in Exhibit B indicates that the collection letter is regarding "MILWAUKEE WI."

40. Exhibit B further states:

> Please be advised, our client, EMPIRE EDUCATION GROUP, has referred your account to us for collection.

41. The representation that Exhibit B is regarding "MILWAUKEE WI" is facially misleading and confusing. Such information provides the consumer, who resides in Milwaukee, with no meaningful clarification as to the name of the creditor or what the reference to "MILWAUKEE WI" means.

6

42. Exhibit B fails to name any entity expressly as the creditor of Plaintiff's alleged debt. Instead, the letter references "EMPIRE EDUCATION GROUP" as ARR's "client," which "has referred your account to [ARR] for collection."

43. Moreover, "EMPIRE EDUCATION GROUP" is not the name used by any entity which had engaged in previous communications with Plaintiff.

44. EEG is incorporated as "EEG, Inc."

45. Although EEG has a registered d/b/a of "Empire Education Group, Inc.," EEG did not use this name in its prior communications with Plaintiff. Instead, as evidenced by Exhibit A, EEG typically referred to itself as "Empire Beauty Schools," and to a lesser extent "EEG, Inc."

46. The Seventh Circuit recently held that a debt collector must *clearly* identify the current creditor of the debt:

> If the validation notice required under § 1692g(a)(2) does not identify the current creditor clearly and accurately, the law has been violated. A plaintiff need not offer additional evidence of confusion or materiality to prove the violation.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

47. "*Clear* identification of the current creditor serves the important purpose of helping unsophisticated consumers avoid fraud and the potential for double payments." *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *5-6 (S.D. Ind. Sept. 19, 2018) (citing *Janetos*, 825 F.3d at 319 and *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *4).

48. Finally, Exhibit B also includes the following representation:

**See reverse side for important information**

49. The reverse side of the second sheet of Exhibit B does not contain any "important information."

50. Indeed, the reverse side of Exhibit B is entirely blank.

7

51. The consumer, faced with an instruction to reference "important information" on a blank page would be confused and misled, and would wonder whether she was actually provided the "important information" she was supposed to receive. *See, e.g., Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp. 3d 340, 352 (S.D.N.Y. 2015) ("He would notice an error—a blank page where he was supposed to find "important information." And he would likely be left uncertain whether he indeed possessed whatever the "important information" was.").

52. Upon information and belief, the purpose of the representation "See reverse side for important information" is to encourage the consumer to contact Frontline by telephone, whereupon Frontline could use aggressive and unconscionable high-pressure tactics to attempt to induce payments from the consumer. *See, e.g., DeGeorge v. Fin. Recovery Servs.*, No. 11-cv-4288, 2012 U.S. Dist. LEXIS 140966 (E.D. Penn. Sept. 28, 2012) (plaintiff stated claim that defendant engaged in unfair debt collection practices by sending letters that "required plaintiff to contact defendant to take advantage of a discount, thereby exposing plaintiff to additional pressures of in-person communication.").

53. Plaintiff read Exhibits A & B.

54. Plaintiff was misled and confused by Exhibits A & B.

55. The unsophisticated consumer would be misled and confused by Exhibits A & B.

56. Plaintiff had to spend time and money investigating Exhibits A & B, and the consequences of any potential responses to Exhibits A & B.

### *The FDCPA*

57. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski*

*v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to

9

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

58. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

59. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because

10

the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

60. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

61. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

62. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

63. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

64. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

65. 15 U.S.C. § 1692f(1) specifically prohibits "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

66. 15 U.S.C. § 1692g(a) provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed[.]

11

### *The WCA*

67. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

68. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

69. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

70. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

71. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

72. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

12

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

74. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

76. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

77. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

78. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

13

## COUNT I - FDCPA

79. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. Count I is brought against Defendant ARR.

81. By threatening and attempting to impose additional charges when EEG and ARR lacked the legal authority to impose such charges, Exhibit B misrepresent the character, amount, and legal status of Plaintiff's alleged debt, threaten to take an action which cannot legally be taken, and seek to collect an amount not permitted by law.

82. Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5) 1692e(10), 1692f, 1692f(1), and 1692g(a)(a).

## COUNT II - WCA

83. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Count II is brought against both Defendants.

85. By threatening and attempting to impose additional charges when EEG and ARR lacked the legal authority to impose such charges, Exhibits A & B could reasonably be expected to threaten and/or harass plaintiff, claim a right that EEG knew or should have know did not exist, and threatens action which EEG does not take in the ordinary course of business.

86. Defendants violated Wis. Stat. §§ 425.104, 425.105, 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDPCA

87. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

14

88. Count III is brought against Defendant ARR.

89. Exhibit B does not clearly and unequivocally identify the name of the current creditor.

90. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

## COUNT IV – FDCPA

91. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92. Count IV is brought against Defendant ARR.

93. Exhibit B states: "See reverse side for important information."

94. The reverse side of Exhibit B does not contain any important information. Instead, the reverse side of Exhibit B is entirely blank.

95. The unsophisticated consumer would be confused and misled by the reference to "important information" on the reverse side where the reverse side contains no consumer notices.

96. Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## CLASS ALLEGATIONS

97. Plaintiff brings this action on behalf of two proposed classes.

98. Class I consists of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the Complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) mailed between September 17, 2018 and September 17, 2019, inclusive, (e) that was not returned by the postal service.

99. Class II consists of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the Complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) mailed between September 17, 2018 and September 17, 2019, inclusive, (e) that was not returned by the postal service.

100. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

101. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual Class members. The predominant common question is whether Defendants complied with the FDCPA and WCA.

102. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

103. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

104. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

105. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 17, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge_____
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com